MARGARITA TOUCHE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4462–70. Filed June 29, 1972.

---

*Towner Leeper*, for the petitioner.
*James N. Mullen*, for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in the Federal gift tax of petitioner as follows:

| Year | Deficiency |
|------|-----------|
| 1966 | $958. 82 |
| 1967 | 1, 143. 71 |

The only issue before the Court is whether petitioner made gifts during the years in question in excess of the annual exclusion provided by section 2503(b)[1] and the lifetime exemption provided by section 2521.

### FINDINGS OF FACT

Some of the facts have been stipulated and, along with the exhibits in support thereof, are incorporated herein by this reference.

Petitioner is a United States citizen who resided in Chihuahua, Mexico, at the time her petition herein was filed. Gift tax returns were filed for 1966 and 1967 with the district director of internal revenue, Austin, Tex.

In 1966, petitioner and her sister, Loretto, each owned an undivided one-half interest in certain income-producing property located on Stanton Street in El Paso, Tex. (hereinafter referred to as the Stanton Street property). Petitioner and her sister wished to make gifts of some of their interest in the property so as to enable their other four sisters to share in the ownership of the property on an approximately equal basis. Towards this end, they consulted a Texas attorney, who advised them that they could avoid Federal gift tax liability by staggering the ultimately intended gift over a period of years. The fair market value of this property during 1966 and 1967 was $276,920.

On December 30, 1966, petitioner and her sister, Loretto, each created four trusts to benefit their four sisters, one trust for each of the four sisters.

Also on December 20, 1966, petitioner executed a deed of gift, prepared by the aforesaid attorney, which purported to transfer to each trust "an undivided 5.25 percent interest" in the Stanton Street property. The gift tax return filed by petitioner for 1966 specified a transfer of four 5.25-percent interests, which were valued on the return at $7,269.15 each, or a total amount of $29,076.60. Such amounts cor-

---

[1] All references are to the Internal Revenue Code of 1954, as amended.

responded to the values of four 2.625–percent interests, or an aggregate 10.5-percent interest in the entire property. The discrepancy between the percentage of interest in the property purportedly transferred and the dollar value attributable thereto was due to an error in the attorney's mathematical calculation of which petitioner was not aware.

In 1967, petitioner, still unaware of her attorney's error, executed another deed, also prepared by him, which purported to transfer an "undivided 2.1 percent interest" in the Stanton Street property to each of the four trusts. The gift tax return filed by petitioner for 1967 specified a transfer of four 2.1-percent interests, which were valued on the return at $2,907.66 each, or a total amount of $11,630.64. Such amounts corresponded to four 1.05-percent interests, or an aggregate 4.2-percent interest in the entire property.

According to the calculations on said returns, no gift taxes were due.

Petitioner's attorney first learned of his error in November 1968, when he received a letter from the Internal Revenue Service informing him of a possible deficiency in petitioner's gift tax for the years in issue. Since that time, no further interests in the property have been transferred by petitioner to her sisters, but she has made an annual gift of $3,000 to each trust for the years 1968 through at least 1971.

On petitioner's income tax returns for the years 1966 through 1970, the income and deductions attributable to the Stanton Street property were reported in accordance with the percentage interests purportedly transferred by petitioner to the trusts. The returns were prepared by petitioner's accountant, who relied upon the aforesaid attorney for information in respect of ownership interest in the Stanton Street property.

On January 10, 1972, a correction deed was recorded for both the 1966 and 1967 deeds and the percentage interest purported to be transferred by the original deeds was divided in half.

### ULTIMATE FINDINGS OF FACT

Petitioner intended to transfer and actually transferred to each trust in 1966 only a 5.25-percent interest in her undivided one-half interest in the Stanton Street property, or a 2.625 undivided interest in the entire property.

Petitioner intended to transfer and actually transferred to each trust in 1967 only a 2.1-percent interest in her undivided one-half interest in the Stanton Street property, or a 1.05-percent undivided interest in the entire property.

OPINION

The question before us is to what extent did petitioner make taxable gifts to trusts for the benefit of four of her sisters in 1966 and 1967? Respondent contends that we should look only to the percentage interests in the Stanton Street property as set forth in the deeds of gift and that consequently petitioner made gifts in twice the dollar amounts reported on her returns for those years. Petitioner counters with the assertion that the facts clearly establish that she intended to transfer only the interests in the property represented by the dollar values shown on her returns and that the percentage interests set forth in the deeds relate to her one-half undivided interest and not to the property as a whole. We agree with petitioner.

Both parties have preoccupied themselves with the impact of the parol evidence rule and the effect, if any, of the correction deed filed on January 10, 1972. In so doing, they have analyzed various aspects of the law of reformation in relation to arm's-length transactions or to varying the dispositive provisions and limitations of instruments of voluntary transfer, and the applicability of the principle of relation back in tax cases. Neither has focused upon what we consider to be the most significant element involved herein—namely, the right of a grantor to obtain reformation of a voluntary conveyance where innocent parties have not relied on such conveyance to their detriment. In short, they have failed, proverbially speaking, to see the forest for the trees, and the authorities which they cite are, therefore, wholly beside the point.

A situation almost identical to that involved herein arose in *Dodge* v. *United States*, 413 F. 2d 1239 (C.A. 5, 1969), affirming 292 F. Supp. 573 (S.D. Fla. 1968), and in *Henry W. Dodge, Jr.*, T.C. Memo. 1968–238, two cases which both parties herein have apparently overlooked. Both cases involved the same transaction by a husband and wife who filed separate income tax returns. They were the owners of certain property and decided to make a gift thereof to a charitable organization. In order to stay within the 30-percent limit placed upon charitable contributions, they planned to make the transfer over a period of years at the rate of a one-fifth interest each year. The initial transfer was made in 1960; as the result of an error by their attorney, the deed of gift purported to transfer the entire property. In 1961, they conveyed a one-fifth interest to the charity; each claimed a deduction in that year for a pro rata share of that interest. The Commissioner disallowed the claimed deduction on the ground that the entire property had been transferred in the prior year. Both we and the Fifth Circuit

held for the taxpayers, the latter specifically adopting the rationale of this Court in *Henry W. Dodge, Jr., supra*.[2]

The rationale of both *Dodge* decisions was that, under the applicable local law, the grantor of a voluntary conveyance is entitled to restructure the transfer because of a unilateral mistake. Consequently, both we and the Fifth Circuit concluded that the charitable donee was given complete ownership of only one-fifth of the property in 1960 and bare legal title to the other four-fifths; the purported transfer of the other four-fifths in 1960 was illusory and therefore did not have the necessary degree of completeness to be recognized for Federal tax purposes. See authorities cited in the *Dodge* opinions. See also sec. 25.2511–2(c), Gift Tax Regs.

Based upon the foregoing, we view this case as requiring the simple determination whether under the law of Texas, where the property was situated, petitioner had, during the taxable years before us, a right of reformation against the gratuitous donees of the 1966 and 1967 deeds of gift because of the unilateral mistake on her part stemming from the actions of her attorney in preparing those deeds of gift. Clearly, under the various authorities set forth in the *Dodge* opinions, she would have had that right in many jurisdictions. While we have found no Texas decision covering the particular legal point involved herein, we are satisfied that petitioner would have such a right under Texas law under such circumstances. See, generally, *Holloway* v. *Wheeler*, 261 S.W. 467 (Tex. Civ. App. 1924); *Brown* v. *Bradley*, 259 S.W. 676 (Tex. Civ. App. 1924); *Grundy* v. *Greene*, 207 S.W. 964 (Tex. Civ. App. 1918); 19 Tex. Jur. 2d, Deeds, sec. 37.

It follows that, inasmuch as petitioner had, during the taxable years before us, the power to revest title in herself as to one-half of the interest purportedly conveyed in the 1966 and 1967 deeds, no completed gift was made as to that portion of the interest during those years.[3]

In light of our decision, we need not consider whether the correction deed filed by petitioner on the date of trial has any retroactive effect for Federal tax purposes. See *Van Den Wymelenberg* v. *United States*, 397 F.2d 443 (C.A. 7, 1968), and *Samuel S. Davis*, 55 T.C. 416 (1970). See also *Harris* v. *Commissioner*, 461 F. 2d 554, 556, fn. 2 (C.A. 5, 1972), affirming a Memorandum Opinion of this Court.

*Decision will be entered for the petitioner.*

---

[2] The Government dismissed its appeal from this decision after the decision by the Fifth Circuit.

[3] We expressly make no finding, nor do we venture any opinion, as to when petitioner did, in fact, make completed gifts of this portion of her interest in the property, e.g., when the petitioner's right of reformation expired. See, e.g., *Burnet* v. *Guggenheim*, 288 U.S. 280 (1933).