**Fred A. BERZON, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**Gertrude BERZON, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**Nos. 860, 861, Dockets 75–4197, 75–4198.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1976.

Decided April 27, 1976.

---

Leonard L. Silverstein, Washington, D. C. (Robert E. Falb, Silverstein & Mullens, Washington, D. C., and Murray Roth, New York City, on the brief), for appellants.

Stanley S. Shaw, Jr., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Grant W. Wiprud, Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before KAUFMAN, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

These are appeals from decisions of the United States Tax Court, holding that certain inter vivos gifts made, in trust, by the appellants, Fred A. Berzon and Gertrude Berzon,[1] failed to qualify for the $3,000 annual gift tax exclusion under Title 26 U.S.C. § 2503(b) of the Internal Revenue Code, and determining gift tax deficiencies of $19,276.05 for each appellant. The gifts at issue involve a total of eight trusts, five of which Fred Berzon created in 1962 and the other three in 1965 for the benefit of his children and grandchildren. Between 1962 and 1968, Berzon and his wife, Gertrude, donated to these trusts a total of 720 shares in The Simons Co., Inc., a closely-held corporation controlled by Berzon, which constituted the entire corpora of the trusts. The terms of each trust were essentially as follows. In the case of an adult beneficiary, provision was made to distribute the trust income quarterly. In the case of a minor beneficiary, income was to be accumulated, subject to a discretionary power in the trustees to apply it for the beneficiary's support and maintenance, until he or she reached the age of 21, at which time all remaining accumulated income would be distributed, together with any part of the corpus *not* consisting of shares in the Simons Company. Each trust was to terminate, with the corpus distributed, (a) upon redemption of the Simons Company shares by the corporation, or (b) twenty years after the execution of the trust instrument, or (c) upon the death of the beneficiary, whichever occurred first.

---

1. The gifts were actually made by Fred A. Berzon, but his wife consented to have them treated as having been made one-half by her as allowed by Title 26 U.S.C. § 2513.

The trustees were given the power to dispose of the trust assets and reinvest the proceeds as they deemed desirable, subject, however, to restrictions which had been placed on all Simons Company shares by virtue of a stockholders' agreement.[2] This agreement provided, *inter alia*, that no stockholder could transfer his shares without the consent of the other stockholders, except by gift to certain relatives, unless he first gave the corporation and the other stockholders the right of refusal. Moreover, once transferred by gift, as in the case of the trusts here in question, shares could not be retransferred except by further gift, but the corporation could redeem the shares from the trusts at any time, provided it had the necessary surplus, and, in any event, it was obligated to repurchase the shares within ten years of the date of the stockholders' agreement (1962), again provided it had the necessary surplus. The stockholders' agreement further required the corporation to repurchase any stockholder's shares at his death, and prohibited the distribution of dividends for the three years during which payment for the shares was to take place. The actual dividend history of the Simons Company stock up to the dates of the appellants' gifts in trust showed that no dividends at all had been paid, at least since 1957.[3]

Appellants filed gift tax returns for the years 1962 through 1968[4] in which the total reported value of the shares transferred to the trusts each year varied between $39,200 and $50,000. Each year appellants claimed a $3,000 exclusion under § 2503(b) for each beneficiary, of which there were five between 1962 and 1964 and eight between 1965 and 1968. The Commissioner of Internal Revenue disallowed the exclusions on the ground that the gifts were of future interests, and, therefore, statutorily ineligible for the $3,000 annual exclusion.[5] The taxpayers petitioned for a redetermination in the Tax Court, claiming, *inter alia*, that their gifts were in fact present interests in property.

■ The Tax Court, citing *Commissioner v. Disston*, 325 U.S. 422, 65 S.Ct. 1328, 89 L.Ed. 1720 (1945) and *Fondren v. Commissioner*, 324 U.S. 18, 65 S.Ct. 499, 89 L.Ed. 668 (1945), noted that "a gift may be separated into its component parts, one of which may qualify as a present interest under section 2503(b)." While viewing the right each beneficiary received in his trust *corpus* as a future interest, the court assumed, without deciding, that the rights to receive trust *income* were present interests under § 2503(b) and (c).[6] It nonetheless found

---

2. There were five stockholders in the Simons Company: Fred A. Berzon, Joseph Berzon, Philip Berzon, Harold Berzon, and Norman Shuman.

3. Up to the time this action was tried, in 1975, no dividends had been paid following the gifts in question. Nor was there evidence in the record that dividends had been paid prior to 1957.

4. Because of the statute of limitations, the Commissioner asserted deficiencies only as to those gifts made between 1965 and 1968, but, for purposes of computing gift taxes on the 1965 through 1968 transfers, the claimed error in taking exclusions for the years 1962 through 1964 was also taken into account in determining the aggregate amount of taxable gifts made by appellants.

5. Title 26 U.S.C. § 2503(b) provides, in relevant part, as follows:
"In the case of gifts (*other than gifts of future interests in property*) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not . . . be included in the total amount of gifts made during such year." (Emphasis added.)

6. Because we agree with the Tax Court that appellants failed to qualify for the exclusion even on the assumption that the income interests were present interests, we have no occasion to consider the Commissioner's contention that what he terms restrictions and contingencies affecting the beneficiaries' receipt of income from the trusts render the gifts in question future interests for purposes of § 2503. We do note, however, that under this court's decision in *Estate of Levine v. Commissioner*, 526 F.2d 717 (2 Cir. 1975), that portion of each minor beneficiary's interest in income which would commence in enjoyment after reaching majority could not in any event qualify as a present interest even by the operation of

that the taxpayers did not qualify for the exclusions sought because "the income interests in question were insusceptible to valuation."

In reaching this decision, the Tax Court looked to the fact that the Simons Company had not paid any dividends for a number of years, up to and including the dates of the gifts, and that its program of business acquisition and expansion would restrict its ability to do so after the gifts were made. In addition, at the time of the 1968 gifts, dividend payments were precluded for the succeeding three years because of the death of one of the stockholders. Although Fred A. Berzon testified that when the first gifts were made in 1962 he had expected the corporation to pay dividends in the future, the court viewed his testimony as "self-serving" and "entitled to little weight." The court further observed that the corporation "was pursuing a program of expansion which resulted in an increased drain on cash in order to increase its inventory and to open a chain of retail stores." For example, in 1963 or 1964 the Simons Company bought out a competitor for several hundred thousand dollars. The Tax Court further noted that the trustees' ability to exchange the Simons Company stock for income-yielding assets was severely limited by the terms of the stockholders' agreement.

Appellants argue that the income interests in this case did have determinable values, and that those values should have been ascertained by reference to the actuarial tables prescribed by Treasury Regulation § 25.2512–5. That section provides for the valuation of, *inter alia*, the right to receive income from property for a term of years or for the life of a person or, as here, on a more complicated basis, by applying an assumed annual yield of 3½ percent [7] to the principal. Appellants concede that, since no

dividends have in fact been paid out since their gifts were made, the use of this method in the present case would produce a valuation of the income interests which is inaccurate *ex post*, but they note that determining the value of an income interest is necessarily "fraught with speculation and uncertainty," *McMurtry v. Commissioner*, 203 F.2d 659, 666 (1 Cir. 1953), and that the tables in question are not intended to operate with total accuracy in particular cases but rather work on "the law of averages," *Gelb v. Commissioner*, 298 F.2d 544, 552 (2 Cir. 1962).

They also contend that the Tax Court erred in conditioning the application of § 25.2512–5 on proof that the Simons Company would pay dividends. According to appellants, whether or not the corporation paid dividends "is only one of a number of imprecise and unpredictable factors that may affect whether, and the extent to which, the donees may actually realize beneficial enjoyment of their income interests," and they urge that the uncertainty as to the amount, if any, of income to be realized by the trusts in this case is not "materially different" from that characterizing any investment in common stocks.

█ We disagree. The burden is on the taxpayer to show that he qualified for the gift tax exclusion under § 2503(b). *Disston, supra; Stark v. United States*, 477 F.2d 131 (8 Cir.), *cert. denied*, 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 218 (1973); *Fischer v. Commissioner*, 288 F.2d 574 (3 Cir. 1961). Specifically, where one claims a $3,000 exclusion on that portion of a gift which is a present interest, he must show that the interest is worth at least $3,000. Treas. Regs. § 25.2503–3(b). Of course, a donor cannot ordinarily prove *exactly* how much an income interest will yield during the term of its existence, and the tables prescribed in Treas.Regs. § 25.2512–5 are an

---

§ 2503(c). The Tax Court's opinion in the present case was rendered prior to this court's decision in *Levine*.

7. This rate applies only to gifts made prior to 1971. Later gifts are valued using a rate of 6%. Treas.Regs. § 25.2512–9.

**532**

appropriate means of fixing a value for gift tax purposes in cases where they may reasonably be expected to provide a fair approximation of the typical yield generated. But the tables are not appropriate in the case of a *non*-income-yielding investment, for in such a case one can predict with assurance that the income generated will be *zero*, and, therefore, that the actuarial tables would produce an obviously erroneous result. With respect to the trusts in question here, the history and business undertakings of the Simons Company, whose shares formed the only trust assets, provided ample evidentiary support for the Tax Court's conclusion that the settlor of these trusts did not intend, nor was his closely-held corporation financially able, to pay any dividends in the foreseeable future as of the time each gift of stock was made. Moreover, the restrictions imposed by the stockholders' agreement made it impossible for the trustees freely to dispose of the stock and replace it at will with income-producing assets. In these circumstances, the use of actuarial tables was not permissible, and appellants failed to show that the income interests in question had any positive value. *See Stark, supra; Van Den Wymelenberg v. United States*, 397 F.2d 443 (7 Cir.), *cert. denied*, 393 U.S. 953, 89 S.Ct. 377, 21 L.Ed.2d 864 (1968); *Fischer, supra*.

The decisions of the Tax Court are, therefore, affirmed.